Case 1:22-cr-00038-DLB   Document 1-1   Filed 01/20/22   Page 1 of 8

✓ FILED ___ ENTERED
___ LOGGED _____ RECEIVED

4:08 pm, Jan 20 2022
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

pcm1.19.21

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF A CRIMINAL COMPLAINT AGAINST CAMERON TAYLOR AND TYJAE BLADEN | Case No. 22-209 and 22-211-ADC <br><br> **UNDER SEAL** |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Special Agent Colleen Daly of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), being duly sworn, depose and state as follows:

## INTRODUCTION

1. This Affidavit is submitted in support of a Criminal Complaint for Cameron TAYLOR (DOB: 6/21/2000; last four of SSN 8176), and Tyjae BLADEN (DOB: 11/30/2000; last four of SSN 5444).

2. Based on the facts set forth in this Affidavit, there is probable cause to believe that TAYLOR and BLADEN violated 18 U.S.C. § 922(o); that is, unlawful possession of a machine gun, on December 13 and December 22, 2021.

## AFFIANT BACKGROUND

3. I am an "investigative or law enforcement officer . . . of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I am a Special Agent with the ATF and am currently assigned to the ATF Baltimore Field Division, Baltimore Group II. I have been employed by the ATF since 2017, and I successfully completed the Criminal Investigator Training Program and Special Agent Basic Training Academies at the Federal Law Enforcement Training Center in Glynco, Georgia. I received extensive training in the provisions of firearms and narcotics laws administered under Title 18, Title 21, and Title 26 of

the United States Code. I have conducted and participated in numerous investigations concerning the illegal possession and trafficking of firearms, federal controlled substance laws, and the commission of violent crimes.

4. I received specialized training and personally participated in various types of investigative activities in connection with these investigations, including, but not limited to: (a) physical surveillance; (b) debriefing defendants, witnesses, informants, and other individuals who had knowledge of firearms and controlled substances; (c) undercover operations; (d) executing search warrants; (e) consensually monitoring and recording conversations; (f) electronic surveillance through pen registers and trap and trace devices; and (g) handling and maintaining evidence.

5. Because this affidavit is being submitted for the limited purpose of establishing probable cause for TAYLOR and BLADEN's arrests, I have not included every fact known to me about this investigation. Rather, I have set forth only those facts I believe are necessary to support TAYLOR and BLADEN's lawful arrest. The statements in this affidavit are based on information provided to me by law enforcement officers, as well as my training, experience, and knowledge of this investigation.

## PROBABLE CAUSE

6. In September of 2021, ATF and the Baltimore Police Department ("BPD") began investigating Maurice DACOSTA after ATF received information from a confidential source ("CS") that DACOSTA was selling and manufacturing privately-made firearms ("PMFs").[1] On October 4, 2021, the CS, at the direction of ATF, contacted DACOSTA and set up a controlled

---

[1] The CS is registered with BPD and is a paid informant. Information provided by the CS has proven reliable and credible in the past and in this investigation. Since 2018, the information he/she has provided has led to the seizure of approximately 30-35 firearms.

purchase of firearms. The CS brought an undercover officer ("UC") with him/her to the controlled purchase, which took place later that day. During the transaction, the UC and CS purchased 3 firearms and various rounds of ammunition, among other things.

7.      Between September and November 2021, the UC purchased 14 firearms from DACOSTA during several other controlled purchases, the vast majority of which were video and/or audio recorded. During the controlled purchases, DACOSTA told the UC he had access to 3D printed firearms and auto switches. Your affiant is aware that an auto switch, also referred to herein as a Glock switch, is a firearm part that makes a semi-automatic handgun fully automatic.

8.      On November 9, 2021, DACOSTA was arrested in Baltimore County on unrelated state charges after an officer saw him asleep in a running car with a black firearm in his lap. Following DACOSTA's arrest, investigators monitored his jail calls.[2] DACOSTA called his girlfriend, Tyjae BLADEN, multiple times.[3] And during a number of these calls, he either asked her to, or asked her to direct others to, sell firearms and Glock switches for him. For example, during a call between BLADEN and DACOSTA on November 13, 2021, BLADEN summarized a message the UC sent her regarding the purchase of firearms, and DACOSTA told BLADEN to charge the UC $2,400 for the firearms. BLADEN then told DACOSTA the "witches" were available and working. Your affiant understands that BLADEN was using the word "witches" to

---

[2] Maryland's DOC monitors and records all calls made by inmates in their facilities. Prior to any call connecting from a Maryland DOC inmate account, a recording advises both the inmate caller and the recipient that the calls are subject to monitoring and recording.

[3] DACOSTA calls BLADEN on 443-488-3209. As noted below, BLADEN has contacted the UC using this phone number and met with the UC in person. Accordingly, through this investigation, investigators have become familiar with BLADEN's voice and are able to identify her voice on jail calls with DACOSTA. Additionally, investigators have listened to jail calls in which DACOSTA calls phone numbers 443-488-8320 and 443-488-3204. The individual who answers the phone occasionally hands the phone to BLADEN during the conversations.

deter law enforcement from recognizing she was talking about the automatic switches. DACOSTA then asked BLADEN if "Valentine," who investigators know is TAYLOR, got the switches working. BLADEN confirmed he did, and then DACOSTA told BLADEN to charge $1,700 for a switch. BLADEN responded, "I need one." DACOSTA asked, "You need one?" BLADEN again stated "I need one" and said that she was going to ask the individual who had them if they had one ready and available. During this call, BLADEN referred to the switches as "witches," and DACOSTA referred to the switches as a "Nintendo Switch."

9. At the direction of DACOSTA, BLADEN repeatedly reached out to the UC to set up firearm and switch purchases.[4] For example, on November 16, 2021, BLADEN texted the UC and said she had a "26" firearm and a magazine for sale. The UC asked BLADEN about Glock switches, and BLADEN stated, "He said it's going to be done buy Friday or Tuesday he said." On November 22, BLADEN and the UC met at the Carroll Fuels Gas Station located at 6823 Harford Road, Baltimore, Maryland, so the UC could purchase the firearm and magazine. When they arrived, BLADEN entered the UC's vehicle for the transaction and handed the UC the firearm. The UC ultimately did not purchase the firearm, however, because it was not working.

10. The UC subsequently asked BLADEN if she could put him/her in contact with the individual who had the Glock switches. On December 9, 2021, BLADEN texted the UC to arrange a meeting for the Glock switch transaction and said, "He said can u come get them tomorrow… the switches." The UC asked how many switches BLADEN had and if they worked. BLADEN confirmed they worked and said there were three. The UC then asked for pictures of the switches. BLADEN sent the UC three images of what appeared to be a light-skinned black male's hand

---

[4] When communicating with the UC, BLADEN utilizes the phone number 443-388-3209, the same number that she uses to call DACOSTA in jail.

holding a firearm with a Glock switch on the rear of the slide. BLADEN and the UC then negotiated a price for the switches with the firearm. On December 12, the UC and BLADEN finalized their plans for the transaction and agreed to meet the next day at 11:00 a.m. at the Carroll Fuels Gas Station, located at 6823 Harford Road, Baltimore, Maryland. Notably, this was the same place BLADEN had met the UC for the attempted purchase on November 22.

11. On the morning of December 13, investigators conducted surveillance at DACOSTA and BLADEN's suspected residence, 8420 Kings Ridge Road, Parkville, MD. At about 10:25 a.m., investigators saw BLADEN enter a car with Cameron TAYLOR and one other unidentified individual, and drive to the meeting location. When BLADEN arrived, TAYLOR got out of the car and got into the UC's vehicle.

12. While in the car, TAYLOR showed the UC the Glock switches and one firearm, and the two negotiated a price. TAYLOR demonstrated to the UC how the firearm worked with the switch device. The UC ultimately paid $6,800 for three 3D printed hybrid auto switches and one 3D printed firearm with an additional auto switch attached to the rear. At the end of the transaction, TAYLOR provided the UC with his phone number and told the UC to contact him for future purchases. TAYLOR then returned to BLADEN's vehicle, and they drove back to 8420 Kings Ridge Road, Parkville, MD.

13. Investigators subsequently sent the 3D printed firearm that had an auto switch attached to the rear to the ATF firearms lab for testing, and analysts confirmed it was a machinegun as defined in 26 U.S.C. § 5845(b).

14. Given that BLADEN drove TAYLOR to the controlled purchase, where he sold the switch to the UC, investigators know that the switch was in the car at the time BLADEN was driving. What's more, given that BLADEN set up the controlled purchase with the UC and

discussed selling switches with DACOSTA, investigators believe BLADEN knew the switches were in the car at the time she was driving.

15. On December 20, 2021, TAYLOR texted the UC and said, "3 Nintendo's for 8k 19 [firearm] for 1150 17 [firearm] for 1250 don't know if I'll be able to get the ratchets in before Wednesday. But if not, you can grab the 3 Nintendo's. And 3rd package the ratchets will come with Nintendo's on them." Based on my training and experience, and knowledge of this investigation to date, I know that the term "Nintendos" often refers to auto switches, as there is a game called "Nintendo Switch." The two then negotiated pricing. TAYLOR stated, "I'll have about 100 of them." He also said that the switches were fully metal and that they switch back and forth from fully automatic to semi-automatic. Later that same day, TAYLOR texted the UC, "Just got good news from up top, these Nintendo's 100." The UC and TAYLOR agreed to meet on December 22 at the Carroll Fuels Gas Station at 6823 Harford Road so the UC could purchase the switches. On December 21, 2021, TAYLOR texted the UC again and stated, "I'll have for sure have 1 pole and 3 Nintendo's!!" TAYLOR then sent a photograph containing three firearms.

16. On December 22, 2021, investigators conducted surveillance at 8420 Kings Ridge Road. A little before noon, investigators saw BLADEN and TAYLOR exit the building and enter BLADEN's car, similar to the December 13 purchase. BLADEN drove TAYLOR to the Carroll Fuels Gas Station. When they arrived, TAYLOR exited BLADEN's car and entered the UC's car. During the purchase the UC bought one metallic auto switch, one 3D printed firearm with one metallic auto switch attached, one Polymer80 PF940C 9mm PMF with one metallic auto switch attached, one 3D extended firearm magazine, one firearm magazine, and two back plate firearm parts for $8,000.

17. Investigators subsequently sent the 3D printed firearm with the metallic auto switch to the ATF firearms lab for testing, and analysts confirmed it was a machinegun as defined in 26 U.S.C. § 5845(b).

18. Given that BLADEN drove TAYLOR to the controlled purchase, where he sold the switch to the UC, investigators know that the switch was in the car at the time BLADEN was driving. What's more, given that BLADEN set up the December 13 controlled purchase with the UC, which was logistically similar to the December 22 purchase, investigators believe BLADEN knew the switches were in the car at the time she was driving.

## **CONCLUSION**

19. Based on the foregoing facts, I believe probable cause exists to support the issuance of a Criminal Complaint and arrest warrant charging TAYLOR and BLADEN with Unlawful Possession of a Machine Gun, in violation of Title 18 U.S.C. § 922(o), on December 13 and December 22, 2021.

WHEREFORE, I respectfully request that the Court authorize the attached criminal complaint and issue the arrest warrants.

Under penalty of perjury, I swear that the foregoing is true and correct to the best of my knowledge, information, and belief.

*Colleen Daly*
Special Agent Colleen Daly, ATF

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 4(d) this __20th__ day of January 2022

*A. David Copperthite*
Hon. A. David Copperthite
United States Magistrate Judge
District of Maryland